UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA GABALDON, | No. 2:16-cv-2218-MCE-EFB P |
| Petitioner, | |
| v. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| DERRAL ADAMS,[1] | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. She challenges her conviction for murder with a special finding that she intentionally and personally discharged a firearm causing death. ECF No. 1 at 2. Petitioner alleges that the prosecutor committed misconduct and that her trial counsel was ineffective. *Id.* at 3. For the reasons that follow, the petition must be denied.

/////

/////

/////

---

[1] Derral Adams, current warden of California Central Women's Facility (where petitioner is incarcerated), is hereby substituted as respondent. Rule 2(a), Rules Governing Section 2254 Cases in the U.S. District Courts; *Bittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992) ("The proper respondent in a federal habeas corpus petition is the petitioner's immediate custodian.").

1

**I. Background**

The facts, as relayed by the California Court of Appeal[2], are:

Defendant met [Rebecca] Brau almost 30 years before the trial. About 17 years into their friendship, the relationship became intimate. When defendant went to prison, in 2001, she and Brau remained in contact and defendant identified Brau as her significant other. After being released from prison in 2012, and completing a mandatory drug treatment program, defendant moved in with Brau. By April 2013, defendant had been living with Brau and her children for several months. Defendant and Brau occasionally argued. Defendant claimed the arguments were not just verbal, but also physical. Brau repeatedly hit defendant and was very abusive, demanding and aggressive when she was drunk, which was every day. One time Brau hit defendant with a belt to her leg and another time Brau punched defendant in the chest twice. After one argument, Brau threw water at defendant and hit her arm.

On April 23, 2013, defendant called the Sacramento County Sheriff's Department to report "her roommate was dead on the floor. Possibly shot in the head." Brau had four gunshot wounds. One wound was just below her chin with stippling, another was at the back right side of her head, the third was near her right armpit, and the fourth near her right abdomen. The stippling near the chin indicated the shot had been fired at close range, less than 18 inches. Brau also had blunt force injuries to her head and legs. The gunshot wounds to the head and abdomen were fatal in and of themselves. Without immediate medical attention, the other two gunshot wounds could have also been fatal. Some of the shots could have been fired when Brau was already on the ground. Deputies found a large bullet embedded in the carpet padding under Brau, which was consistent with a bullet passing through the body while it was lying on the ground.

When sheriff's deputies arrived at the scene, defendant was "moaning loudly," she "was making crying noises," but she was not shedding any tears and her face was not red or puffy. Brau was lying on the ground, on her back, arms over head, and there was "a lot of blood around her head." Defendant denied there were any guns in the house and the deputies did not find any weapons at the scene. There were sheets on the bed covered with a large amount of blood. The sheets had clearly been on the victim previously. It also appeared from the blood patterns that Brau's arm had been moved at some point.

Deputies took samples from defendant's hands and found particles associated with gunshot residue. Nothing at the scene indicated an intruder had broken into the house and there were no signs of a robbery.

Deputy Michael Heller interviewed defendant at the scene. Defendant explained that she and Brau had recently been in an altercation, after which defendant had moved out of the house. Brau later convinced defendant to move back in. She had last seen Brau the night before the shooting. She had gone out in the morning to the post office, returned to the home, and stayed in her room until 1:30 or 2:00 p.m. Brau's son called defendant around 2:45 p.m. and asked her to pick him and his sister up from school, because Brau had not. Defendant left to pick the

---

[2] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

children up, but returned after she was informed she was not authorized to do so. When she returned home, she saw Brau on the floor with blood everywhere. She claimed she had not heard anything, but acknowledged she had moved a sheet and pillowcase from the ground near Brau to the top of the bed.

At trial, defendant provided a version of events that differed from what she had told Deputy Heller. She testified that the night before the killing, Brau was drinking and she and defendant started arguing. The next morning, as defendant was getting ready to go to the post office, Brau stood in the hallway pointing a gun at defendant and said, "You, bitch. Come here." Defendant walked toward Brau and Brau backed up into the bedroom, still pointing the gun at defendant. Defendant tried to grab the gun from Brau, and as they struggled, the gun went off and Brau fell.

ECF No. 13-1 at 2-4.

## II. Analysis

### A. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38 (2011);

*Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, __ U.S. __, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Su-preme] Court, be accepted as correct." *Id*. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was

---
[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

4

'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, the court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### B. **Petitioner's Claims**

Petitioner argues that her trial counsel rendered ineffective assistance in the way he dealt with evidence of her prior felony convictions. She also argues that the prosecutor committed misconduct in the way he used that evidence to impeach petitioner's credibility. ECF No. 1 at 3-4. Each claim concerns an in limine ruling by the trial judge regarding the admissibility of evidence of petitioner's prior convictions and how the attorneys conducted themselves with regard to that evidence during trial. Petitioner unsuccessfully raised these claims in her direct appeal. ECF No. 13-1. Her request for further review by the California Supreme Court was denied. Lodg. Docs. 5 and 6. Accordingly, this court must review the Court of Appeal's determination of petitioner's claims under § 2254 as the last reasoned state court decision. That court provided the following background:

> The People made a motion in limine to allow impeachment of defendant with her three prior felony convictions for robbery and resisting arrest in 2001 and battery on a noninmate in 2008. The trial court ruled it would allow impeachment that "defendant has been convicted of two felony crimes of moral turpitude in 2001, and a felony crime of moral turpitude in 2008." The People sought clarification of the ruling relative to the [defense] expert witness's testimony. Specifically, the prosecutor inquired about the ability to cross-examine the expert on her opinion [regarding the defendant being a victim of battered woman's syndrome] by "asking her about instances because [defendant's] a battered woman yet we know

there's a battery on an inmate that she got convicted and did extra time. I understand the Court wanting to make it moral turpitude for that purpose, but I would request to [be] able to approach and talk about its relevancy at that time under those circumstances." The trial court recognized the proffered defense and defense expert "muddie[d] the water" on the limited use of the prior convictions, and stated, "I believe that if this does come in, it is a factor in which [the expert] took into consideration for the basis of her opinion. It will be allowed in."

During direct examination, defense counsel asked defendant about her prior convictions.

"[DEFENSE COUNSEL]: Let me talk to you about your prior felony conviction. You have a prior felony conviction for robbery, correct?

"[DEFENDANT]: Yes.

"[DEFENSE COUNSEL]: That was in the year approximately 2000?

"[DEFENDANT]: Yes.

"[¶] . . . [¶]

"[DEFENSE COUNSEL]: Also in year 2000 you had a felony conviction for resisting arrest?

"[DEFENDANT]: Yes.

"[DEFENSE COUNSEL]: And based on those two felony convictions at some point you were sentenced to prison?

"[DEFENDANT]: Yes.

"[DEFENSE COUNSEL]: Do you recall how long your prison sentence was?

"[DEFENDANT]: Six years, eight months. Then added for the other one was four years.

"[DEFENSE COUNSEL]: The other one being battery on a non-inmate?

"[DEFENDANT]: Yes.

"[DEFENSE COUNSEL]: So at some point, were you actually released from the original sentence and then taken back into custody because of the alleged battery on a non-inmate?

"[DEFENDANT]: Yes.

"[¶] . . . [¶]

"[DEFENSE COUNSEL]: Okay. When you first went to prison, did you have any problems adjusting?

"[DEFENDANT]: Yes.

7

"[DEFENSE COUNSEL]: And those problems were basically you got into fights with some other inmates?

"[DEFENDANT]: Yes."

Later, on cross-examination, the People also asked about defendant's prior convictions.

"[PROSECUTOR]: Okay. At some point you got into the criminal behavior that led to your three convictions that [defense counsel] talked about?

"[DEFENDANT]: Yes. . . .

"[PROSECUTOR]: Did you—you pled guilty to the robbery?

"[DEFENDANT]: Yeah.

"[PROSECUTOR]: Was that March of 2011?

"[DEFENDANT]: Yes.

"[PROSECUTOR]: You pled guilty to felony resisting arrest with police officers?

"[DEFENDANT]: Yes.

"[PROSECUTOR]: From those two cases, [defense counsel] said you got sentenced to six years, eight months in prison?

"[DEFENDANT]: Yes, I did.

"[PROSECUTOR]: Now, while you were in prison, you committed your third felony, a battery on a non-inmate?

"[DEFENDANT]: The incident happened, yes.

"[PROSECUTOR]: You pled guilty to that, right?

"[DEFENDANT]: Uh-huh.

"[PROSECUTOR]: Yes?

"[DEFENDANT]: Yes.

"[PROSECUTOR]: You got an additional four years for battery on a non-inmate?

"[DEFENDANT]: Yes. Officer said I assaulted her. I didn't. There was no serious injury. I should have fought it, but I did not.

"[PROSECUTOR]: You pled guilty to a felony battery on a non-inmate, right?

"[DEFENDANT]: Yeah. Yes."

Later in cross-examination, as the prosecutor questioned defendant further on her allegations of abuse by Brau, he asked why defendant had not done something to defend herself. Defendant answered, "I'm on high risk parole. Couldn't touch

8

anybody. I'd go [to] prison like that. There's no way. I would never harm [Brau] or hit [Brau] or anything. I don't believe in violence." After getting further clarification on the self-defense training defendant had received, the prosecutor asked why defendant had not moved out after Brau's alleged abuse. Defendant answered:

"[DEFENDANT]: She apologized, then she said that she—because I'm passive and because I cared about her, and I loved the kids.

"[PROSECUTOR]: You're passive?

"[DEFENDANT]: Yes. I grew accustomed to the living arrangement. I forgave her again. Told her if she hit me one more time, I would leave.

"[PROSECUTOR]: [Defendant], you had a felony conviction for resisting arrest. You held a knife at police officers, right?

"[¶] . . . [¶] [Sustained objection to answer as unresponsive]

"[PROSECUTOR]: [Defendant], you indicated to the Court that you're passive in nature. I'm asking you, didn't you plead guilty to felony resisting arrest in which you held a knife at police officers?

"[DEFENDANT]: No. Held a knife to my own wrist.

"[PROSECUTOR]: When they sprayed you with mace, you didn't drop the knife, did you?

"[DEFENDANT]: Then I went blind. I don't remember.

"[PROSECUTOR]: They had to spray you again with mace and still wouldn't drop the knife.

"[DEFENDANT]: I can't recall. A long time ago.

"[PROSECUTOR]: You pled guilty to a battery on a non-inmate while in prison, right?

"[DEFENDANT]: Yes, I did.

"[PROSECUTOR]: That's not passive behavior is it? Just yes or no.

"[DEFENDANT]: No.

"[PROSECUTOR]: And the robbery that you pled guilty to, you actually sat on someone's chest and beat them about the face or head; isn't that right?

"[DEFENDANT]: Never touched Gordon. I was falsely accused of robbery. Falsely accused of assault. I never touched that man.

"[PROSECUTOR]: You pled guilty to it?

"[DEFENDANT]: I didn't have no choice due to the fact of me going over there asking him a favor, asking him for money to put this woman in a motel. She robbed him. I was responsible, so I took six years, eight months for robbery.

9

| | |
|---|---|
| 1 | Yes, I did. |
| 2 | "[PROSECUTOR]: You never— |
| 3 | "[DEFENDANT]: Never touched him. Never touched him. |
| 4 | "[PROSECUTOR]: The battery on a non-inmate wasn't your fault either, right? |
| 5 | "[DEFENDANT]: The battery on non-inmate, I was flushing tobacco down the toilet. The officer grabbed me remanded me, threw me on the ground and said I assaulted her with my elbow. I never touched that cop. No physical injury on the report as well. There's nothing there. |
| 7 | "[PROSECUTOR]: So we have a robbery you pled guilty to in which the accusation was you beat a person, and got personal items from them that you say you never touched him but pled guilty? |
| 9 | "[DEFENDANT]: Pled guilty only because I went to his— |
| 10 | "[PROSECUTOR]: Yes? |
| 11 | "[DEFENDANT]: Yes. |
| 12 | "[PROSECUTOR]: Then you have a battery on a non-inmate that apparently you committed a battery on a correctional officer, in which now you're saying a second time you did not touch the person, yet you pled guilty, right? |
| 14 | "[DEFENDANT]: You can look at the report. I'm not lying. |
| 15 | "[PROSECUTOR]: Just asking if you pled guilty to a second case in which— |
| 16 | "[DEFENDANT]: Yes. Only because I was—I had tobacco and flushed it, yes, I [was] responsible for that. |
| 18 | "[PROSECUTOR]: Then the felony resisting arrest, you had a knife, and you say the knife was only used on your own wrist and you never resisted arrest of the officers, but you pled guilty to that also, right? |
| 20 | "[¶] . . . [¶] [Sustained objection to answer as non-responsive] |
| 21 | "[PROSECUTOR]: Would it be fair to say that you pled guilty to three felony crimes that involved some degree of violence, all of which you deny ever occurring? |
| 23 | "[DEFENDANT]: You can look at the report. I'm not lying. Yes. |
| 24 | "[PROSECUTOR]: In this particular instance, you're denying shooting Rebecca Brau? |
| 25 | "[DEFENDANT]: Never touched Rebecca Brau. Struggled with her. |
| 26 | "[PROSECUTOR]: This was [Brau's] fault? She had the gun, and she shot herself during the struggle? |
| 28 | "[DEFENDANT]: I don't understand how this happened. Yes." |

10

> Dr. Linda Barnard testified on defendant's behalf as an expert in domestic violence. In addition to interviewing defendant about her history of abuse with Brau, amongst other things, Dr. Barnard reviewed police reports for this incident, arrest reports for defendant's prior felonies, a toxicology report, the coroner's report, a police report of a March 2013 domestic violence call from defendant regarding Brau, defendant's prison medical records, and the transcript of the sheriff's interview of defendant from the night of the shooting. Dr. Barnard also discussed all three prior convictions and their underlying facts with defendant in her examination. Dr. Barnard concluded defendant had been the victim of intimate partner battering. On direct examination, she testified she based this conclusion on her examination of defendant and the materials she reviewed in preparation for that examination.

ECF No. 13-1 at 4-10.

### i. **Competence of Trial Counsel**

Petitioner argues that her trial counsel rendered constitutionally deficient assistance. In rejecting that same argument the Court of Appeal stated,

> Defendant raises two claims of ineffective assistance of counsel. First, defendant claims counsel was ineffective by eliciting testimony on the specific nature of her prior convictions, despite the trial court's ruling admitting only a description of the convictions as involving moral turpitude. Second, defendant claims counsel was ineffective by failing to object to the prosecutor's alleged misconduct in cross-examining defendant as to facts underlying her prior convictions. We conclude defendant has not demonstrated that counsel's representation was deficient.
>
> In order to prove ineffective assistance of counsel, defendant must show: "(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 (*Rodrigues*); *see also Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693].) "If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails." (*Rodrigues, supra*, at p. 1126.)
>
> "We presume 'counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and accord great deference to counsel's tactical decisions. [Citation.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 674 (*Lewis*).) "[W]hen the reasons for counsel's actions are not readily apparent in the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the appellate record discloses "'no conceivable tactical purpose'" for counsel's act or omission." (*Id*., at pp. 674-675; *cf. People v. Ray* (1996) 13 Cal.4th 313, 349 ["In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission"].) "'[T]he defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."' [Citation.]" (*People v. Ochoa* (1998) 19 Cal.4th 353, 446.)

It is not deficient performance for defense counsel to fail to make "objections that counsel reasonably determines would be futile," (*People v. Price* (1991) 1 Cal.4th 324, 387) or objections that "would have likely been overruled by the trial court. (*See, e.g., People v. Osband* (1996) 13 Cal.4th 622, 678 [counsel not ineffective in failing to make a futile objection to introduction into evidence a photograph of the crime scene]; *People v. Sanchez* [(1997)] 58 Cal.App.4th [1435,] 1450 [counsel not ineffective in failing to object to introduction of the gang evidence likely to be admissible in any event].)" (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 924 (*Mendoza*).)

### 1. Ineffective Assistance of Counsel in Direct Examination

Defendant contends she received ineffective assistance of counsel "by her counsel's ignorance of a favorable in limine ruling." She asserts "[d]espite the fact that defense counsel obtained a partially favorable ruling on his motion in limine to exclude for impeachment purposes evidence of [defendant's] prior felony convictions, based on his direct examination of [defendant], it appears he completely forgot the court's ruling." Specifically, defendant complains counsel was ineffective by eliciting testimony on direct examination of defendant about her prior convictions, referencing the specific offenses of robbery, resisting arrest, and battery on a noninmate; rather than referring to the crimes simply as involving moral turpitude. We disagree.

Even "where defense counsel may have '"elicit[ed] evidence more damaging to [defendant] than the prosecutor was able to accomplish . . ."' [citation], we have been 'reluctant to second-guess counsel' [citation] where a tactical choice of questions led to the damaging testimony." (*People v. Williams* (1997) 16 Cal.4th 153, 217 (*Williams*).) Here, the record does not affirmatively establish there was " ' "no conceivable tactical purpose" ' " for trial counsel's questions. (*Lewis, supra*, 25 Cal.4th at p. 675.) To the contrary, defense counsel may have elicited specifics about the prior convictions because he knew the specifics were going to be admissible because they were considered by defendant's expert.

Defense counsel provided the expert with the materials she relied upon in forming her opinion. Therefore, he knew that the details of the prior convictions, including the specific charged offenses and underlying factual details, were included in that information. Based on the trial court's pretrial ruling, defense counsel also knew the prosecution would be able to cross-examine defendant's expert on those specific charged offenses. Knowing the specific offenses for which defendant was convicted would be admitted in cross-examination of the expert, defense counsel's choice to preemptively bring the prior convictions out in defendant's testimony could have been to limit or reduce their potential impact on the jury. It could also "be fairly characterized as a reasonable tactical choice designed to demonstrate defendant's candor and honesty to the jury." (*Mendoza, supra*, 78 Cal.App.4th at p. 928.) As acknowledged by defendant on appeal, her credibility was imperative to her defense. The attempt to minimize the impact of the prior convictions on defendant's credibility was a reasonable tactical choice. Accordingly, we cannot find counsel's performance was deficient and defendant's claim of ineffective assistance of counsel fails. (*Williams, supra*, 16 Cal.4th at p. 218.)

/////

/////

| | |
|---|---|
| 1 | *2. Ineffective Assistance of Counsel in Cross-Examination* |
| 2 | Defendant contends trial counsel was also ineffective for failing to object to the prosecutor's "improper cross-examination" as to the facts underlying her prior convictions. "An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.) |

"Evidence tending to contradict a witness's testimony is relevant for purposes of impeachment." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1025; *see also* Evid. Code, § 780, subd. (i).) Even a so-called collateral matter may be relevant to a witness's credibility, particularly as to the existence or nonexistence of any fact testified to by the witness. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) As discussed above, the cross-examination of defendant, relative to the facts underlying her convictions, was a proper effort to contradict specific testimony by defendant that she was passive and nonviolent. It did not run afoul of the trial court's in limine ruling, and it was likely admissible under Evidence Code section 780, subdivision (i).

In addition, the evidence also would have likely been admissible under Evidence Code section 1103, which sets forth exceptions to the general rule that character evidence is inadmissible to prove acts consistent with that character on a specific occasion. (Evid. Code, § 1101, subd. (a).) One such "exception allows a criminal defendant to offer evidence of the victim's character to show the victim acted in conformity with it. (Evid. Code, § 1103, subd. (a)(1).) If the defendant offers evidence showing the victim has a violent character, then the prosecution may offer evidence of the defendant's violent character to show the defendant acted in conformity with it. (Evid. Code, § 1103, subd. (b).)" (*People v. Myers* (2007) 148 Cal.App.4th 546, 552.) "In other words, if . . . a defendant offers evidence to establish that the victim was a violent person, thereby inviting the jury to infer that the victim acted violently during the events in question, then the prosecution is permitted to introduce evidence demonstrating that (1) the victim was not a violent person and (2) the defendant was a violent person, from which the jury might infer it was the defendant who acted violently." (*People v. Fuiava* (2012) 53 Cal.4th 622, 696.) Defendant offered evidence that the victim, Brau, was violent and acted violently on the morning of the shooting. She testified Brau had been abusive and violent toward her on a number of occasions, including hitting her with a belt, punching her in the chest, throwing water at her and hitting her arm. She also testified that the struggle started with Brau pointing a gun at her and saying, "You, bitch. Come here." The People were entitled to rebut the evidence that Brau was a violent person with evidence that defendant was a violent person. The facts underlying her convictions were evidence on that point.

Because there were two independent grounds on which the facts underlying defendant's convictions could have been admitted, trial counsel could have reasonably determined that any objection to the cross-examination regarding those facts was futile or likely to be overruled. Accordingly, the failure to object in these circumstances was not ineffective assistance of counsel.

ECF No. 13-1 at 12-16.

As respondent argues, petitioner has not met her burden of establishing that the state court's reasoning "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The state court correctly stated the legal standards applicable to petitioner's ineffective assistance claim. Under those standards, petitioner was required to show, among other things, that counsel's performance fell below an objective standard of reasonableness. *Id.* at 104. A fairminded jurist could conclude, for the reasons provided by the Court of Appeal, that petitioner's trial counsel's conduct with regard to her prior convictions was reasonable; that is, because the facts underlying the convictions were admissible both under state law and the in limine ruling (as clarified by the trial judge when the prosecutor asked about petitioner's expert's testimony) and because there were conceivable tactical reasons for counsel's conduct.

Petitioner has not established that the state court's rejection of her ineffective assistance of counsel claims were contrary to, or an unreasonable application of, clearly established federal law as she was required to do by § 2254(d). Accordingly, these claims do not justify issuance of a writ of habeas corpus.

### ii. **Prosecutor's Conduct**

Petitioner argues that the prosecutor committed misconduct by questioning her about her prior felony convictions. The state court rejected this claim as having been forfeited as well as lacking merit. The state court reasoned:

> Defendant contends the prosecutor committed misconduct by "violating the court order regarding the permissible scope of impeachment of [defendant] with her prior felony convictions." Defendant forfeited this claim by failing to object and request curative admonitions in the trial court. (*People v. Lopez* (2008) 42 Cal.4th 960, 965-966.)
>
> Recognizing that the failure to object and request a curative admonition forfeits this issue on appeal, defendant contends this claim may be considered here, because "'the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict . . .' (*People v. Lambert* (1975) 52 Cal.App.3d 905, 908.)." The cases stating this rule have long since been overruled on this point (*People v. Green* (1980) 27 Cal.3d 1, 28-34, overruled on other grounds as noted in *People v. Dominguez* (2006) 39 Cal.4th 1141, 1155, fn. 8), and the "close case" exception once used to avoid the forfeiture rule is no longer recognized (*People v. Cain* (1995) 10 Cal.4th 1, 48).
>
> Moreover, we do not agree the prosecutor violated the trial court ruling. The People sought to admit defendant's prior felony convictions to generally challenge her credibility. (Evid. Code, § 788.) The trial court ruled that the prosecution could impeach defendant's credibility by indicating she had been

14

> convicted of three crimes of moral turpitude, without specifying the nature of the specific convictions. To the extent defendant complains that the prosecution improperly cross-examined her regarding the specific nature of the prior convictions, she is estopped from making this claim. Defense counsel identified the nature of the convictions on direct examination. N.2 "Since defendant is responsible for the introduction of the evidence, [s]he cannot complain on appeal that its admission was error." (*People v. Moran* (1970) 1 Cal.3d 755, 762.)
>
> FOOTNOTES
>
> > 2 Defendant also raises claims of ineffective assistance of counsel regarding this conduct. We address those claims separately below.
>
> As to the cross-examination on the facts underlying defendant's convictions, we do not agree this was included within the scope of the court's ruling. The in limine ruling pertained to a prior conviction being offered as a specific instance of conduct "tending to prove a trait of [defendant's] character," (Evid. Code, §§ 787, 788) such as dishonesty. The questioning on the facts underlying defendant's convictions was not offered as evidence of a character trait to attack defendant's general credibility. Rather, it was offered as testimonial contradiction, to contradict and disprove defendant's specific testimony that she was nonviolent and passive. (Evid. Code, § 780, subd. (i); *People v. Cooks* (1983) 141 Cal.App.3d 224, 324; *People v. Reyes* (1976) 62 Cal.App.3d 53, 65.) This was proper cross-examination and not precluded by the trial court's in limine ruling.

ECF No. 13-1 at 10-13.

Respondent argues that petitioner's claim has been procedurally defaulted by her trial counsel's failure to object to the prosecutor's questioning. As a general rule, a federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state procedural rule that is independent of the federal question and adequate to support the judgment. *Walker v. Martin*, 562 U.S. 307, 314 (2011). California's rule requiring that a party make a contemporaneous objection to preserve an issue for appeal is such an adequate and independent state rule. *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999). Ordinarily, a petitioner may obtain federal review of a defaulted claim only by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

However, a federal habeas court need not always resolve the question of procedural default prior to ruling on the merits of a claim. *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues

are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same"); *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default should ordinarily be considered first, a reviewing court need not do so invariably, especially when the issue turns on difficult questions of state law). Where deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claim on the merits and forgo an analysis of procedural default. *See Franklin*, 290 F.3d at 1232 (citing *Lambrix*, 520 U.S. at 525).

Here, respondent concedes that, if trial counsel's failure to object to the prosecutor's questions on petitioner's prior convictions constituted ineffective assistance of counsel, such ineffective assistance establishes "cause" for the default. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Rather than independently review whether the failure to object constituted deficient performance and then analyze whether petitioner has suffered prejudice as a result, it is more economical to simply review the merits of petitioner's claim of prosecutorial misconduct. And a review of the merits of that claim shows that petitioner again has failed to overcome § 2254(d)'s exacting standards.

Prosecutorial misconduct violates the Constitution only where it made the trial so unfair as to deny the defendant due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A prosecutor's use of prior felony convictions to attack a defendant's credibility is not improper. *Moore v. Ollison*, 377 F. App'x 679, 682 (9th Cir. 2010). As the Court of Appeal reasonably concluded, the prosecutor's questioning of petitioner regarding the details of her prior felony convictions was permissible to rebut her earlier testimony that she was passive and nonviolent. The state court's conclusion that no prosecutorial misconduct occurred was not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, petitioner's claim of such misconduct must be denied.

/////

/////

16

### III. Recommendation

For the reasons stated above, it is hereby RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 24, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE